383 So.2d 639 (1980)
THE FLORIDA BAR, Complainant,
v.
Ronald J. HOFFER, Respondent.
No. 57288.
Supreme Court of Florida.
May 1, 1980.
Donald A. Smith, Jr., Asst. Staff Counsel, Tampa, and A.P. Gibbs, Bar Counsel, Dade City, for complainant.
Robert F. Moeller of the Law Offices of Ronald J. Hoffer, Zephyrhills, and Joseph C. Jacobs of Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, for respondent.
PER CURIAM.
This disciplinary action is before us on complaint of The Florida Bar, report of the referee, and petition of Hoffer to review the referee's recommendations.
The referee made extensive findings of fact from which we quote in part:
As to Count I
3) On or about 5 December 1975, Respondent, RONALD J. HOFFER, a Member of the Florida Bar prepared and filed a Civil suit, in Case No. 75-1996 in the Circuit Court for Pasco County, Florida, wherein B.M. Lantzy and L. Lantzy, his wife were designated Plaintiffs and J.B. White and Government National Mortgage Association were designated as Defendants. The nature of the proceedings was to "establish and foreclose a lien on certain real property... ." The alleged property owner, JOHN B. WHITE, was served by publication, the first publication date being 10 December 1975.
4) The Complaint prepared and filed by the Respondent alleges that Government National Mortgage Association was made a party to the action "by virtue of the fact that said Defendant is the current holder of the mortgage on the real property which is subject of this action." At the time the complaint was filed, the Public Records of Pasco County, Florida, affirmatively showed that the subject mortgage had been assigned by an instrument filed for record on 26 February 1974 from Government National Mortgage Association (herein referred to as GNMA) to Colonial Mortgage Service Company of California (herein referred to as CMSC).

*640 5) Respondent Hoffer, as Counsel for the plaintiffs did not personally search the public records, nor did he obtain a certified search of ownership and encumbrance report prior to filing the complaint. The search was conducted per his request by a secretary in his office. Had a proper search been conducted, Respondent would have known that the then current holder of the subject mortgage was CMSC and not GNMA as alleged. By answer Respondent admitted that he failed to sufficiently search or cause to be searched, the Public Records of Pasco County, Florida, prior to filing the Complaint.
.....
As to Count II
7) Attorney David G. Mulock testified that his law firm was retained by CMSC to foreclose their mortgage given by John B. White and his former wife; that he obtained a title report and discovered the lis pendens filed in the case of Lantzy v. White; that the Lantzys were served; and that an Answer was filed on their behalf by Respondent Hoffer. The Answer attempted to assert the defense of res judicata against CMSC by reason of Respondent's suit in Lantzy v. White. Mr. Mulock then moved for leave to intervene in the Lantzy v. White case.
8) It is significant that the Complaint filed by CMSC against Defendants White and Lantzy specifically alleged that CMSC was the holder of the subject note and mortgage "by assignment of mortgage dated January 21, 1974 recorded February 28, 1974 in OR BOOK 739 page 1174, Public Records of Pasco County."
9) The Motion of CMSC for Leave to Intervene, filed on June 1, 1976 alleged that CMSC is the assignee of the mortgage originally given by Defendant John B. White and that GNMA has no right title and interest in said mortgage. Hearing was set for June 8, 1976 by notice served May 28, 1976.
.....
11) Having no response on July 27, 1976 Mr. Mulock again noticed hearing on his motion to intervene for September 7, 1976. Despite this notice, Respondent submitted a Final Judgment to Circuit Judge Robert L. Williams which was signed on August 18, 1976 and filed for record the following day. The proposed Final Judgment was submitted to the Court without notice to CMSC and was not discovered by counsel for CMSC until the September 7th hearing. At the hearing Respondent argued that CMSC was precluded from asserting any interest because Final Judgment had already been entered. Mr. Mulock then prepared an Affidavit and motion for Relief from Default and Final Judgment. The Affidavit complained inter alia that the Judgment was obtained through surprise and fraud; that Respondent knew that CMSC claimed to own the subject mortgage and agreed to postpone the final hearing "but nonetheless rescheduled the final hearing without notice... ."
.....
14) The intentional submission of the Judgment to the Court without notice to opposing counsel prior to the scheduled hearing on the motion to intervene thwarted proper administration of justice and cannot be condoned. While it might be said that the mere failure to notice the assignment on the original search constitutes technical though not a wilful violation, I find that Respondent's delegation of legal responsibility; his failure to properly supervise his non-lawyer staff; and his subsequent wilful actions in the face of actual and constructive notice, to be improper and inexcusable in direct violation of the Disciplinary Rules as charged under paragraphs 11 and 30 of the Complaint.
As to Count III
15) In June 1975 Respondent represented Plaintiff William Lane and Marjorie Lane, his wife, in a personal injury action against Withlacoochee River Electric Cooperative, Inc. and Employers Mutual Liability Company of Wisconsin. *641 For purpose of settling this case, defense counsel prepared a special release and hold harmless Agreement which was sent to Respondent to present to his clients.
16) The original "smooth" copy contained a provision releasing not only the defendants but also "any other person, partnership, firm or corporation charged or chargeable with responsibility or liability," and when the document left the office of attorney Robert E. Banker, no provisions had been typed over or stricken.
.....
18) Marjorie Lane testified that Respondent brought the Release to her home where it was signed. It was notarized by Respondent and at the time it was executed the objectionable phrase was X'd out.
.....
21) Mrs. Marjorie Lane confirmed that the retyped language was not in the release when it was signed. Respondent subsequently filed another lawsuit for the Plaintiffs against one Mr. Doty. A copy of the release was then filed as a bar to the proceeding. Robert L. Williams, then Circuit Judge, testified that Respondent represented to the Court that the release had been altered; that when he had the release executed the language was X'd out and unbeknownst to him the words were typed back in. Mr. Hoffer was given additional time to check into the matter and as a result of Mr. Hoffer's representation, the Court was concerned and had the distinct impression that the release may have been altered by defense counsel after it had been delivered by Respondent's office.
.....
23) Marsha Carter related that she typed in the X's at Mr. Hoffer's direction; and that she also typed the interlined words back in. This was also done at Mr. Hoffer's direction. The defense indicated Marsha Carter is confused and that the additions were not made on their typewriters.
.....
26) Based upon the evidence, testimony and demeanor of the witnesses I find it incredible to believe that Respondent was unaware of the alteration. He was informed that there would be no settlement if everyone was not released after which Respondent personally arranged for his secretary to deliver the document and pick up the check. His secretary admitted typing the words back in at his direction and the implication to the Court that defense counsel may have changed the instrument after it left his office is of serious concern. His poor judgment and lack of candor [sic] is inconsistent with accepted professional behavior.
The referee recommends Hoffer be found guilty of violating certain Florida Bar Code of Professional Responsibility disciplinary rules[1] and that he be suspended from the *642 practice of law for three years and thereafter until he proves rehabilitation and demonstrates that he understands Florida's Code of Ethics.
Hoffer challenges the referee's findings of fact as not being supported by clear and convincing evidence. Our responsibility in a disciplinary proceeding is to review the referee's report and, if his recommendation of guilt is supported by the record, to impose an appropriate penalty. The Florida Bar v. Hirsch, 359 So.2d 856 (Fla. 1978). The referee, as our fact finder, properly resolves conflicts in the evidence. See The Florida Bar v. Rose, 187 So.2d 329 (Fla. 1966). We have reviewed the record and the report of the referee, and we find that the referee's findings of fact and recommendations of guilt are supported by clear and convincing evidence.
We disagree, however, with the referee's recommendation that Hoffer be suspended for three years. The discipline assessed against an attorney not only should protect the public interest but also should be fair to the attorney. The Florida Bar v. Thomson, 271 So.2d 758 (Fla. 1972). Under the peculiar facts of this case, we conclude that a two-year suspension is appropriate.
Accordingly, we approve the referee's recommendation of guilt and suspend Hoffer from the practice of law for two years and until such time as he proves rehabilitation and demonstrates that he understands Florida's Code of Ethics. The suspension shall be effective June 2, 1980, thereby giving Hoffer time to close out his practice and take the necessary steps to protect his clients, and it is ordered that Hoffer shall not accept any new business. Costs of $1,180.29 are taxed against Hoffer.
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD, OVERTON, SUNDBERG, ALDERMAN and McDONALD, JJ., concur.
NOTES
[1] DR 1-102. Misconduct

(A) A lawyer shall not:
.....
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
.....
DR 6-101. Failing to Act Competently
(A) A lawyer shall not:
.....
(2) Handle a legal matter without preparation adequate in the circumstances.
.....
DR 7-102. Representing a Client Within the Bounds of the Law
(A) In his representation of a client, a lawyer shall not:
.....
(2) Knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law.
(3) Conceal or knowingly fail to disclose that which he is required by law to reveal.
(4) Knowingly use perjured testimony or false evidence.
(5) Knowingly make a false statement of law or fact.
(6) Participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false.